**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-24854-KMM

DEYBIS CRISTOFER RAMIREZ REYNOSO,

      Petitioner,

v.

CHARLES PARRA, in his official capacity as
Assistant Field Office Director, Krome North
Service Processing Center, *et al.*,

      Respondents.

_____/

## <u>ORDER</u>

THIS CAUSE came before the Court upon Petitioner Deybis Cristofer Ramirez Reynoso's

Petition for Writ of Habeas Corpus and Request for Order to Show Cause (the "Petition" or "Pet.").

(ECF No. 1).  The Court issued an Order to Show Cause (the "OTSC") requiring Respondents to

file one consolidated memorandum of fact and law to show cause why the Petition should not be

granted.  *See generally* (ECF No. 4).  Respondents thereafter filed a Response to Order to Show

Cause (the "Response" or "Resp.") (ECF No. 4), and Petitioner filed a Reply thereto (the "Reply")

(ECF No. 7).  The Petition is now ripe for review.  As set forth below, the Petition is GRANTED

IN PART as to Petitioner's entitlement to a bond hearing.  The Court makes no determination as

to whether Petitioner is in fact entitled to be released following such a hearing.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Petitioner alleges that he has resided in the United States since entering the country as an

unaccompanied alien child ("UAC") in or around August of 2016.  Pet. ¶ 43.  A native of

Guatemala, he requested admission at the Ysleta Border Crossing in El Paso, Texas as a thirteen-

year-old minor on or about August 23, 2016.  Resp. at 2; (ECF No. 6-1).  At that time, U.S.

Customs and Border Protection ("CBP") determined that Petitioner was inadmissible and on August 24, 2016, issued a Notice to Appear (the "NTA") charging Petitioner with inadmissibility in violation of Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) as an immigrant who lacked a valid entry document, suitable travel document, or document of identity and nationality, and INA § 212(a)(4)(A) as an alien likely at any time to become a public charge. Resp. at 2; (ECF No. 6-2). On that same day, CBP transferred Petitioner into the custody of U.S. Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR") and was then released to his father's custody on September 10, 2016. Resp. at 2; (ECF No. 6-3) ¶¶ 9, 11.

Removal proceedings were initiated on or about October 27, 2016, when CBP filed the NTA with Respondent Executive Office for Immigration Review ("EOIR") in Miami, Florida. Resp. at 2. Counsel for Respondent Department of Homeland Security ("DHS"), named through its Secretary Kristi Noem in her official capacity, dropped the INA § 212(a)(4)(A) charge at the first master calendar hearing and at the second master calendar hearing, Petitioner through counsel admitted the NTA's allegations, conceded the INA § 212(a)(7)(A)(i)(I) charge, and denied the INA § 212(a)(4)(A) charge. (ECF No. 6-3) ¶ 13; Resp. at 2; (ECF No. 6-4) (Petitioner's written pleadings from these proceedings). On March 28, 2019, an Immigration Judge sustained Petitioner's removability pursuant to INA § 212(a)(7)(A)(i)(I). Resp. at 2–3; (ECF No. 6-3) ¶ 14.

On or before February 7, 2023, EOIR removed Petitioner's removal proceedings from its active calendar pursuant to EOIR's Off-Calendar Initiative under 8 C.F.R. § 1003.9(b). Resp. at 3; (ECF No. 6-3) ¶ 15. This resulted in Petitioner's removal proceedings remaining "dormant" until on or about September 16, 2025, when he was arrested after a traffic stop and transported to CBP's West Palm Beach Border Patrol Station. Resp. at 3; (ECF No. 6-3) ¶¶ 16–17; (ECF No. 6-5). Respondent U.S. Immigration and Customs Enforcement, Enforcement and Removal

Operations ("ICE ERO"), named through Todd Lyons in his official capacity as ICE Acting Director and Garret Ripa in his official capacity as ICE ERO Miami Field Office Director, thereafter took custody of Petitioner and transferred him on October 1, 2025 into the physical custody of the Krome North Service Processing Center ("Krome") located at 18201 SW 12th Street, Miami, Florida 33194 and placed him on the Krome Immigration Court docket. Pet. ¶¶ 1–2; Resp. at 3; (ECF No. 6-3) ¶ 19.

Petitioner alleges that because he was apprehended at a traffic stop after having lived in the United States since approximately August 2016 when he entered without inspection or admission, he is properly subject to 8 U.S.C. § 1226(a) but is being illegally detained without a bond hearing because he is being treated as subject to 8 U.S.C. § 1225. Pet. ¶¶ 43–49. Respondents note that Petitioner remains at Krome and has not requested reconsideration of his bond hearing determination or sought release from ICE ERO. Resp. at 3; (ECF No. 6-3) ¶¶ 20–22. Petitioner alleges that because this classification is not just a policy promulgated by DHS, the Department of Justice ("DOJ"), and ICE but also a position adopted by the Board of Immigration Appeals (the "BIA"), as further discussed below, he is unable to be heard on his request for bond. Pet. ¶¶ 46, 48. He further represents that he is neither a flight risk nor a danger to the community, as demonstrated by his now having a child who is a U.S. citizen and lack of criminal history while in the country except for traffic citations. *Id.*

Petitioner asserts three Counts based on Respondents' application of § 1225(b)(2) to his detention: (1) Count I for violation of the INA; (2) Count II for violation of applicable bond regulations; and (3) Count III for violation of due process. *See* Pet. ¶¶ 50–61. Thus, Petitioner asks the Court to: (1) assume jurisdiction over this matter; (2) order that Petitioner shall not be transferred outside the Southern District of Florida while the Petition is pending; (3) issue an order

to show cause ordering Respondents to show cause why this Petition should not be granted within three days; (4) issue a writ of habeas corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days; and (5) declare that Petitioner's detention is unlawful. *Id.* at 14.

In the OTSC, the Court assumed jurisdiction over the Petition, ordered that Petitioner was not to be transferred out of this District until the instant proceedings are terminated, ordered Respondents to notify the Court of the attorney assigned to this case and file one consolidated memorandum of law and fact to show cause why the Petition should not be granted, and deferred consideration of the other relief requested in the Petition until after the Response and Reply had been reviewed. *See* (ECF No. 4) at 4–5. The Response and Reply have since been filed. *See* (ECF Nos. 6, 7). Respondents argue that Petitioner is properly detained pursuant to 8 U.S.C. § 1225(b)(2) as an arriving alien within the meaning of § 1225(a)(1) or in the alternative as an applicant for admission within the meaning of § 1225(b)(2)(A), that an Immigration Judge is without authority to consider bond release, that the legislative history of the INA supports Respondents' position that § 1225 requires detention of all aliens entering the United States without admission except as provided by 8 U.S.C. § 1182(d)(5), that § 1226 does not impact Respondents' detention authority, and finally that this determination is not disturbed or otherwise impacted by Petitioner's status as a UAC at the time of arrival. *See generally* Resp. Petitioner argues in opposition that he is properly detained pursuant to § 1226 and therefore is entitled to be heard on bond. *See generally* Reply.

## II.     LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2241(c)(3).  Habeas corpus is fundamentally "a remedy for unlawful executive detention."  *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted).  The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration."  *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).  Further, for "'core habeas petitions,' 'jurisdiction lies in only one district:  the district of confinement.'"  *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)).  The Court's habeas jurisdiction extends to challenges to immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   DISCUSSION

### a.   The Policy

The new policy that Petitioner alleges resulted in his improper classification, "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Policy"), was announced by ICE and promulgated by DHS in coordination with the DOJ and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival.  INA § 235(a)(1)."  *ICE Memo:  Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo").  The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole."  *Id.* Contrary to previous practice, the Policy imposes mandatory detention regardless of the circumstances of an alien's entry without inspection or admission.  *See generally* ICE Memo.

The BIA adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)." 29 I. & N. Dec. 216, 229 (BIA 2025). Immigration Court refusals to provide bond hearings had already been the subject of much dispute, and as discussed below the Policy has been heavily litigated across the country.

The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S. ports of entry. *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order, *Cerro Perez v. Parra et al.*, No. 25-cv-24820, at *6–11 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases). Nevertheless, a distinct split has emerged since. *See generally, e.g.*, *Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-cv-25966, 2026 WL 911291 (S.D. Fla. Apr. 2, 2026) (Ruiz, J.) (finding detention pursuant to § 1225(b) proper); *Morales v. Noem*, No. 25-cv-62598, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (same); *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 25-cv-24121, 2026 WL 472294 (S.D. Fla. Feb. 19, 2026) (Artau, J.) (same); *Hernandez v. Miami Field Off. Dir.*, No. 26-cv-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026) (Altman, J.) (same).

6

The Fifth and Eighth Circuits have both recently held, as the first Circuit Courts to do so, that aliens in situations such as Petitioner's are properly detained pursuant to § 1225(b)(2)(A) and are therefore not entitled to release on bond. *See generally Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). On the other hand, the Second Circuit in *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (11th Cir. Apr. 28, 2026) determined that those same aliens are properly detained pursuant to § 1226(a) and are therefore entitled to a bond determination. The Eleventh Circuit, within which this Court sits, has now similarly found that § 1226(a), and not § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings. *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, Nos. 25-14065, 25-14075, 2026 WL 1243395 (11th Cir. May 6, 2026).

### b.  Administrative Exhaustion

While Respondents do not explicitly assert failure to exhaust administrative remedies, they nevertheless note that Petitioner has failed to request reconsideration of his bond denial or otherwise seek release. (ECF No. 6-3) ¶¶ 20–22. Petitioner in substance alleges that such administrative measures would be futile because *Matter of Yajure Hurtado* has become binding precedent on all Immigration Judges. Pet. ¶¶ 46, 48. Respondents confirm as much in arguing that Immigration Judges do "not have authority to consider release on bond." Resp. at 6–8.

To the extent Respondents seek to raise an administrative exhaustion claim, the Court agrees with Petitioner that such exhaustion would be futile. Exhaustion may be excused "where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted). This is plainly the case here, where Immigration Judges may only properly reach one conclusion absent new

precedent from the BIA. *See Puga*, 2025 WL 2938369, at *2 ("Thus, considering *Matter of Yajure Hurtado*, it appears evident that an alien like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA." (citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221)); Order, *Cerro Perez*, No. 25-cv-24820, at *3 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (finding initial bond hearing request futile).

The Court fails to find any basis upon which a bond appeal to the BIA or request for reconsideration or release to an Immigration Judge could possibly result in an outcome other than sustaining Petitioner's detention pursuant to § 1225(b)(2)(A). Thus, the Court finds that any prudential exhaustion requirements that may be applicable here are excused for futility.

### c. Statutory Framework

Turning then to the merits of the Petition, Petitioner alleges that because he was apprehended at a traffic stop after having lived in the United States since approximately August 2016, he is not "arriving" within the meaning of the statute and therefore properly subject to detention under § 1226(a) rather than § 1225(b). Pet. ¶¶ 43–49. Respondents argue that Petitioner is indeed "arriving" and therefore is subject to § 1225(b)(2)'s mandatory detention as well as an applicant for admission who entered the United States without inspection. *See* Resp. at 2–5. As an initial matter, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez*, 2026 WL 496726, at *3.

The Eleventh Circuit has now directly answered this question: § 1226(a) applies to "unadmitted aliens found in the interior of the United States." *Hernandez Alvarez*, 2026 WL 1243395, at *1. In reaching this conclusion, the Eleventh Circuit considered the text, statutory

structure, and history of the INA to determine that the terms "applicant for admission" and "seeking admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not. *See id.* at \*5–20. As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.* § 1225(a)(1). Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim. *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants for admission not covered by § 1225(b)(1)," subject to several exceptions. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title," which governs removal. 8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined. *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269

9

(D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A). Such discretionary parole, however, "shall not be regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General: (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization. *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework." *See* 8 U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269. The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[1]

---

[1] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA. The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

The crucial determination, therefore, is whether a person found within the United States and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Such a finding would require a reading that all "applicants for admission," which is any alien present without admission or arriving, are also "seeking admission." *Id.* As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop. *Hernandez Alvarez*, 2026 WL 1243395, at *8 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing a word necessitates sharing a meaning, is unpersuasive.").

As the Supreme Court has noted, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—"an alien who is an applicant for admission" and "an alien seeking admission"—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.

> We therefore reject the Government's reading and affirm the district court's orders

granting each of the Petitioners habeas corpus relief.

*Hernandez Alvarez*, 2026 WL 1243395, at *21.

### d.  Petitioner's Detention

Applying the foregoing, Petitioner is properly considered an applicant for admission as an alien present in the United States who has not been admitted under § 1225(a)(1), but is not "seeking admission" within the meaning of § 1225(b)(2)(A).  For the reasons discussed above, "seeking admission" and "applicant for admission" are not synonymous, and there is no contention that Petitioner was somehow attempting to secure admission into the country when he was detained following his traffic stop.  Further, that statute requires that an "examining immigration officer" determine that an alien be one "seeking admission" to invoke mandatory detention pending a § 1229a proceeding, and there is no indication in the materials provided by Respondents that such determination occurred when Petitioner was arrested in 2025.  *See id.* § 1225(b)(2)(A); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025).

Briefly reviewing Respondents' arguments to the contrary, they first argue that Petitioner is an "arriving alien" within the meaning of § 1225(a)(1) because his UAC status ended when he was released to his father's custody and at latest when he turned eighteen, which was well before his traffic stop in September 2025.  *See* Resp. at 4–5.  Petitioner argues the fact that UACs are treated differently as to their detention, transfer, and placement upon arrival evidences "Congress's clear intent to treat UACs differently from adults who arrive without lawful admission."  Pet. ¶¶ 40–42.  Petitioner does not say exactly what impact this differential classification upon arrival would have on whether he is to be detained now, and Respondents cite to *Mendez Ramirez v. Decker et al.*, 612 F. Supp. 3d 200, 210 (S.D.N.Y. 2020) for the proposition that the protections afforded to a UAC end if the person is not a UAC or in ORR custody when arrested by ICE which therefore renders them an "arriving alien" once again.  *See* Resp. at 4–5.

12

Respectfully, the Court agrees with Petitioner that both Respondents and the court in *Mendez Ramirez* miss the point of how a UAC classification functions. A UAC released indefinitely into the United States in a parent's care is not the same as a person paroled into the country for a limited urgent humanitarian reason or significant public benefit within the meaning of 8 U.S.C. § 1182(d)(5)(A). As the court in *Martinez v. Hyde* noted, "[n]othing in *Mendez Ramirez* or any of the cases it cites explains why a UAC's entry into the United States—facilitated by DHS and HHS, no less—would not necessarily mean that the UAC has finished 'arriving in the United States' for purposes of section 1225(b)(1). At least as a constitutional matter, it is simply not the case that an entry into the United States occurs only when Congress intends it." 810 F. Supp. 3d 135, 145 (D. Mass. 2025);[2] *see also Leng May Ma*, 357 U.S. at 187 (noting enhanced protections are afforded aliens present in the country, even illegally).

Here, Petitioner was first declared inadmissible pursuant to INA § 212(a)(4)(A) and § 212(a)(7)(A)(i)(I) on August 23, 2016, at which time he was placed into Section 240 removal proceedings. *See generally* (ECF Nos. 6-1, 6-2). When the NTA was issued one day later on August 24, 2016, the box labeled "You are an arriving alien." was checked. *See* (ECF No. 6-2). Respondents provide a declaration explaining how Petitioner was transferred to CBP's custody as a UAC, but do not provide any underlying documentation of such transfer that would allow the Court to determine under what authority Petitioner was transferred. *See, e.g.*, (ECF No. 6-3) ¶ 11 (referencing "ORR Release paperwork" but failing to attach or specifically identify the same). As Respondents note, § 1182(d)(5)(A) states that when DHS exercises its discretion to parole aliens

---

[2] *See also id.* at 145 n.30 ("It is, moreover, not at all obvious that Congress did *not* intend this exact outcome."). As Petitioner argues, this interpretation is consistent with the fact that UACs may not be placed into expedited removal proceedings and instead require full removal proceedings, meaning that they are entitled to further process than other excludable aliens at the border. *See id.*; 8 U.S.C. § 1232(a)(5)(D)(i); Reply at 3.

into the country, such parole only continues until "the purposes of such parole . . . have been served" at which time the "case shall continue to be dealt with in the same manner as that of any other applicant for admission." Resp. at 6. Upon review of the materials that were provided, however, there is no basis to believe that Petitioner was paroled into the country in some limited way which purposes could "have been served" at some concrete point so as to revert Petitioner to his previous immigration status. *See* 8 U.S.C. § 1182(d)(5)(A). Further, that statutory provision states that the case shall proceed in the same manner as "any other *applicant for admission*," which for the reasons discussed above would still not necessarily render Petitioner subject to mandatory detention under § 1225(b)(2)(A). *See* 8 U.S.C. § 1182(d)(5)(A) (emphasis added).

Conversely, the September 16, 2025 Report of Deportable/Inadmissible Alien resulting from Petitioner's traffic stop explicitly notes that Petitioner "was not inspected, admitted, or paroled into the U.S. by an Immigration Officer." (ECF No. 6-5) at 3. Thus, the Court is unable to discern the basis for Respondents' argument now that Petitioner is a "formerly paroled alien" whose immigration status reverted to "arriving alien" upon losing his UAC status. *See* Resp. at 4–5. Additionally, unlike Petitioner's NTA issued in 2016, which specifically designated him as an arriving alien when he was indeed arriving at the border and seeking to join his father in Florida, no paperwork has been provided here that similarly designates him as such where he was detained within the country's borders. *See generally* (ECF Nos. 6-2, 6-5).

Respondents argue in the alternative that even if Petitioner is not an "arriving alien," he would still be subject to detention as an applicant for admission under 8 U.S.C. § 1225(b)(2)(A). For the reasons discussed above, that Petitioner is an applicant for admission still does not bring him within the ambit of § 1225(b)(2)(A) because he was not seeking admission at the time that he was arrested and detained following his traffic stop. *See Hernandez Alvarez*, 2026 WL 1243395,

14

at *21 (rejecting the government's argument that petitioners were seeking admission because they did not voluntarily self-deport following their arrest and initiation of removal proceedings).

For the reasons set forth above, the Court finds that § 1226(a) and its implementing regulations govern Petitioner's detention, not § 1225(b)(2)(A), and therefore that Petitioner is detained in violation of the laws of the United States pursuant to 8 U.S.C. § 2241. Accordingly, Petitioner is entitled to an individualized bond hearing as a detainee under § 1226(a).

### e. Due Process Violation

The Court will not reach the merits of Petitioner's due process claim because the relief requested in the other Counts is granted for the reasons stated above. *See Puga*, 2025 WL 2938369, at *6; *Castro*, 2026 WL 788019, at *6. Should Respondents fail to provide Petitioner with a bond hearing as ordered herein, Petitioner may renew his due process claim.

### IV.   CONCLUSION

Accordingly, UPON CONSIDERATION of the Petition, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Petition (ECF No. 1) is GRANTED IN PART. Count III of the Petition is DISMISSED WITHOUT PREJUDICE. Within seven (7) days of this Order, Respondents shall provide Petitioner with an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner. Such bond may not be denied on the basis that Petitioner is detained pursuant to § 1225(b)(2).

DONE AND ORDERED in Chambers at Miami, Florida, this __7th__ day of May, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

15